**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN TURNER | : | |
| 6651 Gillespie St. | : | |
| Philadelphia, PA 19135 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: |
| | : | |
| v. | : | |
| | : | |
| ABSOLUTECARE MANAGER, LLC | : | **JURY TRIAL DEMANDED** |
| 10175 Little Patuxent Pkwy. | : | |
| Columbia, MD 21044 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by John Turner (hereinafter referred to as "Plaintiff") against AbsoluteCARE Manager, LLC (hereinafter referred to as "Defendant"). Plaintiff asserts violations of the Americans with Disabilities Act, as Amended ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Pennsylvania Human Relations Act ("PHRA), and the Philadelphia Fair Practices Ordinance ("PFPO"). Plaintiff contends he was subjected to discriminatory and retaliatory mistreatment while employed (as explained *infra*) and that she was unlawfully terminated from her employment.

## JURISDICTION AND VENUE

2.     This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5.      Plaintiff is proceeding herein under ADA and has properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

### **PARTIES**

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant a full-service primary care community health system.

9.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff was hired by Defendant on or about November 18, 2024, as a Complex Care Manager ("CCM").

12.     At all times during his employment with Defendant, Plaintiff worked out of Defendant's 1080 N. Delaware Ave. #800, Philadelphia, PA location and reported to Naja Mouzon – Manager of Utilization Management (hereinafter "Mouzon").

13.     Throughout the course of his employment, Plaintiff met all physical requirements and other necessary qualifications to perform the job that he was hired for at Defendant.

14.     Plaintiff has and continues to suffer from disabilities under the ADA, including Bipolar Disorder and Anxiety, which (at times) impacts his ability to engage in daily life activities, including but not limited to engaging in social interaction, learning, thinking, focusing, and working (among other daily life activities).

15.     Plaintiff disclosed that he had a disability on his application while applying for a job at Defendant.

16.     However, throughout November and December of 2024, Plaintiff had to take intermittent time off from work for reasons related to his aforesaid disabilities.

17.     In or about December of 2024, Mouzon informed Plaintiff that he was out of available days, to which Plaintiff responded by informing her of his specific disabilities and letting her know that his prior absences were related to his disabilities

18.     During the rest of December and into January of 2025, Plaintiff was subjected to racial and gender-based discriminatory treatment by one of the doctors at Defendant, specifically

Dr. Tina Ahmadinejad (hereinafter "Dr. Ahmadinejad"), which only increased flare ups of his disabilities.

19. Plaintiff is an African-American/Black male and the only Black male CCM at Defendant's Philadelphia, PA location during his employment with Defendant.

20. Upon information and belief, Dr. Ahmadinjad is an Indian female.

21. While working with Dr. Ahmadinjad, she was rude, demeaning, and consistently questioning Plaintiff competence and professionalism.

22. Plaintiff did not witness her treat other employees outside of his protected classes in the same manner.

23. As a result of the aforesaid discrimination, Plaintiff tried to address his concerns with Mouzon verbally and in writing in January of 2025.

24. For example, on January 28, 2025, Plaintiff specially complained to Mouzon about the negative manner in which Dr. Ahmadinjad engages with him as a black male versus the way she engages with others outside of his protected classes.

25. During his aforesaid verbal discussion with Mouzon, Plaintiff was verbally reprimanded by Mouzon, which was later documented in a "recap" email to him on the same day.

26. Plaintiff responded to Mouzon's email again reiterating his concerns of racial/gender discrimination.

27. During the January 28, 2025 meeting with Mouzon, Plaintiff and Mouzon also discussed his disability again, and on the same day Plaintiff, received an email from Defendant's Senior Human Resources Business Partner, Tammie Kelly, indicating that Human Resources ("HR") had been made aware of a possible need to discuss FMLA and/or ADA and that she had added a calendar invite to have an "interactive discussion" the next day (January 29, 2025).

4

28. On or about January 29, 2025, Plaintiff met with Kelly and Defendant's Associate Vice President, HR Operations, Julia Judge (hereinafter "Judge") to discuss his disabilities and need for medical work-related accommodations.

29. During Plaintiff's meeting Kelly and Judge on January 29, 2025, Plaintiff also raised concerns about the aforesaid discrimination that he had already previously discussed with Mouzon.

30. In response to his escalating concerns of discrimination, Plaintiff was told by Kelly and Judge that they would perform an investigation into his complaints.

31. On January 30, 2025, Plaintiff sent Kelly and Judge a list of proposed accommodations that he believed would be helpful for his disabilities (including but not limited to intermittent time off and a flexible schedule).

32. Plaintiff received confirmation that Kelly and Judge had received his January 30, 2025 email the same day.

33. Over the course of the next few weeks, Plaintiff kept Defendant's HR department apprised of his efforts to provide them with additional medical information and support regarding his disabilities and need for accommodations.

34. However, during this time frame, Plaintiff continued to be subjected to discrimination by Dr. Ahamadinjad, as well as retaliation by Mouzon.

35. Therefore, Plaintiff continued to express concerns of discrimination and retaliation to Kelly and Judge, including via email on February 12, 2025.

36. On February 14, 2025 (only two days after Plaintiff emailed a complaint of discrimination and retaliation), Plaintiff received a final written warning from Mouzon and was accused via email of not showing up for a calendared meeting to discuss the same.

37.     Plaintiff responded to Mouzon, notifying her that he had been actively attempting to resolve technical issues since early that morning, and that he was informed she had been notified of the same.

38.     Plaintiff further stated in his response to Mouzon that he believed the aforesaid final written warning was issued in retaliation for his prior complaints of unlawful discrimination and retaliation.

39.     Plaintiff copied Judge and Kelly on his aforesaid email to Mouzon, as neither of them had yet addressed his prior concerns of retaliation (or discrimination).

40.     On or about February 20, 2025, Plaintiff submitted another complaint of discrimination/retaliation to Defendant's HR department, wherein he specifically indicated that he had been subjected to a hostile work environment and outlined several instances of retaliation by Mouzon following his initial complaint of racial/gender discrimination (and in close proximity to discussions related to his health and need for reasonable accommodations under the ADA).

41.     Plaintiff notified HR that the aforesaid discrimination/retaliatory treatment he was being subjected to was interfering with his work and negatively impacting his disabilities.

42.     As a result of the foregoing, Plaintiff requested immediate HR intervention, as he had still not received a response from his prior communications with Mouzon, Kelly and Judge.

43.     Kelly responded to Plaintiff's aforesaid February 20, 2025 email the same day, but only to confirm receipt.

44.     On February 21, 2025, Plaintiff provided HR with an unsigned ADA accommodation form, as his appointment with his physician had not occurred yet.

45.     Plaintiff notified HR that a signed form, along with a request for intermittent medical leave would be provided after his evaluation with his medical provider.

46.     In response, Defendant gave Plaintiff until February 28, 2025 to have his medical provider complete the necessary paperwork.

47.     Defendant indicated that if he did not submit the aforesaid paperwork from his medical provider by February 28, 2025, his accommodation file would be closed.

48.     As a result, Plaintiff called his doctor's office and managed to get scheduled with the next available  medical provider (rather than his established one) on February 25, 2025, in order to try to get the forms completed as quickly as possible – but notified HR that if he was unable to get the forms completed (as he was not meeting with his established medical provider) that he would request an extension.

49.     After his doctor's appointment on February 25, 2025, Plaintiff provided the signed ADA form to Defendant's HR office (the same day).

50.     Plaintiff's medical provider outlined several suggested accommodations for Plaintiff, including but not limited to intermittent medical leave, flexible schedule, customizable breaks, telecommuting, virtual meeting attendance, written instructions and communication, and recorded performance-based meetings.

51.     On the evening of February 25, 2025, Plaintiff received a Teams calendar invite from Defendant's Vice President of Strategy and Development, Kamellia Saroop, for an 8:00 a.m. meeting on February 26, 2026.

52.     Plaintiff inquired about why the February 26, 2025, meeting was scheduled, but he did not receive a response.

53.     Therefore, Plaintiff emailed Saroop and cc'd Kelly and Judge again the next morning asking for clarity on the topic of the meeting and stating that his disability symptoms worsened the day prior due to the discriminatory/retaliatory treatment at work, which was only

further exacerbated by Defendant's management lack of clarity regarding the meeting scheduled for February 26, 2025.

54.    However, Plaintiff was again met with silence.

55.    Instead, during the aforesaid February 26, 2025 meeting, Plaintiff was notified that he was being terminated from his employment with Defendant.

56.    Plaintiff was notified during this meeting by the HR director that the problems which led to his termination were allegedly not reported to her.

57.    Following his termination, Plaintiff continued to follow up with Defendant in order to determine the specific reasons for his termination, but he did receive a response.

58.    Defendant's HR department has also never followed up with Plaintiff regarding his complaints of discrimination and retaliation, despite making said complaints numerous times to HR since January of 2025 (and requesting that they intervene several times prior to his termination).

59.    Based on the foregoing, Plaintiff believes and avers that she was terminated for discriminatory and retaliatory reasons in violation of federal and state law.

**Count I**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; &**
**[3] Failure to Accommodate)**

60.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61.    Plaintiff's actual, perceived and/or record of disability was a motivating or determinative factor in Defendant's decisions to issue him discipline and ultimately terminate his employment.

8

62.    Plaintiff also believes and avers that Defendant issued him pretextual discipline and then terminated his employment in retaliation for engaging in protected activity under the ADA.

63.    Lastly, Plaintiff believes and avers that Defendant failed to accommodate him.

64.    These actions as aforesaid constitute violations of the ADA, as amended.

**Count II**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; &**
**[3] Failure to Accommodate)**

65.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66.    Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count I of the instant Civil Action Complaint, as such actions constitute identical violations of the PHRA.

**Count III**
**Violations of the Philadelphia Fair Practices Ordinance ("PFPO")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; &**
**[3] Failure to Accommodate)**

67.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

68.    Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count I of the instant Civil Action Complaint, as such actions constitute identical violations of the PFPO.

**Count IV**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

69.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9

70.      Plaintiff was subjected to a discriminatory and retaliatory hostile work environment through disparate treatment, discriminatory/retaliatory harassment, and pretextual discipline because of his race and/or complaints of racial discrimination.

71.      Shortly following his last complaints of racial discrimination and retaliation to various members of Defendant's management, Plaintiff was terminated from his employment.

72.      Plaintiff believes and avers that his race was a motivating or determinative factor in Defendant's decision to terminate his employment.

73.      Plaintiff also believes and avers that he was terminated in retaliation for engaging in protected activity under Title VII.

74.      Plaintiff asserts that Defendant's actions (discussed *supra*) were carried out in violation of Title VII.

**Count V**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

75.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

76.      Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count IV of the instant Civil Action Complaint, as such actions constitute identical violations of the PHRA.

**Count VI**
**Violations of the Philadelphia Fair Practices Ordinance ("PFPO")**
**([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

77.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

78.      Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count IV of the instant Civil Action Complaint, as such actions constitute identical violations of the PFPO.

10

**Count VII**
**Violations of 42 U.S.C. Section 1981 ("Section 1981")**
**([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

79.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

80.     Plaintiff was subjected to a discriminatory and retaliatory hostile work environment through disparate treatment, discriminatory/retaliatory harassment, and pretextual discipline because of his race and/or complaints of racial discrimination.

81.     Shortly following his last complaints of racial discrimination and retaliation to various members of Defendant's management, Plaintiff was terminated from his employment.

82.     Plaintiff also believes and avers that he was terminated because of his race and/or in retaliation for engaging in protected activity under Section 1981.

83.     Plaintiff asserts that Defendant's actions (discussed *supra*) were carried out in violation of Section 1981.

**Count VIII**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Gender Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

84.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

85.     Plaintiff was subjected to a discriminatory and retaliatory hostile work environment through disparate treatment, discriminatory/retaliatory harassment, and pretextual discipline because of his gender and/or complaints of gender discrimination.

86.     Shortly following his last complaints of gender discrimination and retaliation to various members of Defendant's management, Plaintiff was terminated from his employment.

11

87.     Plaintiff believes and avers that his gender was a motivating or determinative factor in Defendant's decision to terminate his employment.

88.     Plaintiff also believes and avers that he was terminated in retaliation for engaging in protected activity under Title VII.

89.     Plaintiff asserts that Defendant's actions (discussed *supra*) were carried out in violation of Title VII.

## Count IX
## Violations of the Pennsylvania Human Relations Act ("PHRA")
### ([1] Gender Discrimination; [2] Retaliation; [3] Hostile Work Environment)

90.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

91.     Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count VIII of the instant Civil Action Complaint, as such actions constitute identical violations of the PHRA.

## Count X
## Violations of the Philadelphia Fair Practices Ordinance ("PFPO")
### ([1] Gender Discrimination; [2] Retaliation; [3] Hostile Work Environment)

92.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

93.     Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count VIII of the instant Civil Action Complaint, as such actions constitute identical violations of the PFPO.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's

illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B.      Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant and other employers from engaging in such misconduct in the future;

C.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress/pain and suffering);

D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law;

E.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F.      Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: 

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: August 5, 2026

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| John Turner | : | CIVIL ACTION |
| v. | : | |
| Absolutecare Manager, LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (x )

| | | |
|---|---|---|
| 8/5/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

10/2024

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

Place of Accident, Incident, or Transaction:  Defendants place of business

---

***RELATED CASE IF ANY:***  Case Number:_____  Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.**  ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.**  ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

### ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

TURNER, JOHN

**(b)** County of Residence of First Listed Plaintiff  Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

ABSOLUTECARE MANAGER, LLC

County of Residence of First Listed Defendant  Howard
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101)

Brief description of cause:
Violations of the ADA, PHRA and the PFPO.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE  8/5/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT  _____   APPLYING IFP  _____   JUDGE  _____   MAG. JUDGE  _____